Arturo Javier VELASQUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–95–062–CR.

Court of Appeals of Texas,
Corpus Christi.

Jan. 9, 1997.

Rehearing Overruled March 20, 1997.

Ricardo Alanis, McAllen, for appellant.

Rene Guerra, District & County Attorney, Theodore C. Hake, Asst. Criminal District Attorney, Edinburg, for State.

Before YAÑEZ, CHAVEZ and RODRIGUEZ, JJ.

## OPINION

CHAVEZ, Justice.

Appellant Arturo Javier Velasquez was convicted of delivery of less than twenty eight ounces of cocaine. Velasquez allegedly sold a baggie of cocaine in a motel room to an undercover police officer, Lucas Torres. Torres had been led to Velasquez by an informant who did not appear as a witness in the trial. Velasquez was not arrested until a month and a half later. The substance in the baggie was tested in a laboratory and found to be cocaine, but was then lost and could not be produced at trial. Several visiting judges presided over the proceedings against Velasquez. Judge Garmon and Judge Lanford heard pre-trial motions, Judge Dunham presided over the actual trial, and Judge Barnes signed an order for a bench warrant.

Appellant brings six points of error. The first alleges that the Impact Court in which he was tried functioned to deprive him of his constitutional right to a fair trial in a variety of ways. His second point alleges error in the trial court's failure to conduct a jury shuffle. The third point complains that the State violated due process by failing to offer the contents of the baggie to the defense for examination. The next point argues that appellant received ineffective assistance of counsel. Next, appellant argues that the evidence was insufficient to support the verdict. Finally appellant argues that the trial court erred in failing to hold a hearing on his motion for new trial and allowing it to be overruled by operation of law. We affirm the judgment.

We begin by addressing an issue that is pertinent to several of appellant's claims.

Appellant argues that the State was required to produce the actual cocaine allegedly used in the offense in order to convict appellant. However, the Court of Criminal Appeals has recognized circumstances when production of the contraband will not be required, explaining:

> It is true, as appellant argues, that a defendant should be given access to contraband for the purpose of analysis *when available.* (citation omitted). There are instances, however, when it is not available, such as when it is lost or is destroyed in the process of analysis. Under such circumstances it is not error to convict for possession of drugs absent the physical presence of the drug itself, providing the drug has been analyzed and the chain of custody explicated ... (citation omitted) ... Of course, the State must not be allowed to purposely or carelessly destroy evidence with an eye to harming a defendant, but there was no showing of bad faith in this case. (emphasis in the original)

*Lake v. State,* 577 S.W.2d 245, 246 (Tex.Crim. App.1979).

■ In this case, the contraband was analyzed and found to contain cocaine. The chain of custody leading up to the analysis was accounted for. While appellant did argue at trial that his prosecution was the result of a vendetta against him by the McAllen police, appellant failed to demonstrate any bad faith on the part of the police in losing the contraband involved in this case. The only evidence presented in support of appellant's revenge theory pertained to a complaint appellant had filed against the McAllen police arising out of a separate incident. While this evidence may have provided a possible motive for revenge against the appellant, it does not, by itself, show that the contraband was lost in bad faith. Therefore, the State's failure to present the contraband did not preclude appellant's conviction.

Appellant's first point of error charges that "the 206th District Impact Court of Hidalgo County functioned unconstitutionally throughout appellant's trial and deprived appellant of a fair trial." Appellant's argument under this point of error asserts several instances where his constitutional right to a fair trial was allegedly infringed. The first relates to the treatment of appellant's motion to inspect, test, and examine the evidence the State claimed was the cocaine Velasquez sold. Although this motion was granted, it appears from the record that the defense never did examine the evidence as permitted by the court's order on its motion. Appellant notes that his counsel at trial, Ricardo Alanis, told Judge Lanford in a pre-trial hearing that the motion had been denied. Appellant's complaint here is that Judge Lanford should have familiarized himself more with the case file so that when Alanis incorrectly told him that the motion had been denied, he could have spotted the error and inquired about ensuring that the defendant was able to examine the evidence. Appellant's theory is that "Judge Lanford failed to safeguard that appellant's rights to discovery be protected in that being unfamiliar with the case he did not follow up as a regular presiding judge would have to insure [sic] that discovery be completed before the trial began."

■ Appellant has cited no authority for his theory that a trial judge has a constitutional duty to familiarize himself with the case sufficiently to correct misstatements of the defendant's counsel and assert the defendant's rights when they are not asserted by the defense. This argument would have the practical effect of preventing the doctrine of waiver from ever applying to acts of defense counsel. Of course, it is well established that criminal defendants may waive certain rights by failing to assert them. *See, e.g., Moody v. State,* 827 S.W.2d 875, 889 (Tex.Crim.App. 1992) (defendant's response of "no objection" waived right to challenge admissibility of evidence); *Mercado v. State,* 695 S.W.2d 25, 28 (Tex.App.—Corpus Christi 1985), *aff'd,* 718 S.W.2d 291 (Tex.Crim.App.1986) (defendant's failure to object to trial court's finding of fact after jury had returned verdict waived complaint of error). The defense counsel's failure to insist on compliance with the order for examination of the evidence did not create any duty on the part of the trial judge to assume the role of advocate for the defendant's rights.

Furthermore, the context of this incident also indicates that appellant's complaint is without merit. Defense counsel made his misstatement during oral argument on his motion for instructed verdict. At that point, the state had rested its case. The misstatement was a brief comment in a long argument, in which the defense counsel argued that the state's failure to present the actual contraband in evidence prevented a conviction, and that the *Lake* case was not controlling. No issue pertaining to whether discovery had been properly completed prior to trial was raised by either side. We hold that no error was committed by Judge Lanford in this instance which deprived the defendant of any constitutional rights.

■ Next, appellant argues that the treatment of his motion for new trial deprived him of his constitutional right to a fair trial. Appellant's motion was overruled by operation of law after 75 days. Tex.R.App.P. 31(e)(3). Appellant argues that Judge Dunham, the trial court judge, was without authority to rule on the motion since his assignment to the court had ended, and that no other judge was presented with the motion to rule on it. Appellant argues that this manner of disregarding his motion so that it be overruled by operation of law denied him his constitutional right to a fair trial. However, there is no indication in the record that Judge Dunham was not authorized to rule on the motion if he desired to do so. Appellant never requested a hearing on his motion for new trial, and there is nothing unconstitutionally unfair about a motion being overruled by operation of law after seventy five days.

■ Even if appellant had requested a hearing, it would not have been error for the trial court to deny the request for a hearing and allow the motion to be overruled by operation of law. When there are no issues presented in a motion for new trial which require proof to be developed outside the record, the trial court does not err in overruling the motion without providing the appellant a hearing. *Darrington v. State,* 623 S.W.2d 414, 416 (Tex.Crim.App.1981). Appellant's motion in this case referred only to matters already in the record of the case. The motion itself states "The Motion for New Trial is based upon the record made in the earlier trial." This point is overruled.

■ Next, appellant argues that no jury shuffle was conducted despite an order from Judge Garmon that a shuffle be conducted, and that this also deprived him of his constitutional right to a fair trial. However, the right to a jury shuffle is not a constitutional right. *Yanez v. State,* 677 S.W.2d 62, 68 (Tex.Crim.App.1984). Appellant's second point of error also complains of the lack of a jury shuffle, but without alleging any deprivation of a constitutional right. The motion for a jury shuffle was granted on June 6, 1994, but a jury was not actually qualified and brought in for voir dire until October 31, 1994. Although the right to a jury shuffle was granted in June, at that time there was no jury to shuffle. The appropriate time for a motion to shuffle the jury is after the jurors have been qualified but before voir dire begins. *Williams v. State,* 719 S.W.2d 573, 577 (Tex.Crim.App.1986). There is no indication in the record that appellant ever attempted to assert his right to a jury shuffle at the appropriate time. As with the failure to seek examination of the physical evidence, the trial judge has no duty to assert the defendant's rights for him when the defendant fails to assert them. This point is overruled.

■ Appellant's third point of error argues that the State's failure to offer the contraband to the defense for examination violated the Due Process Clause as interpreted by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Thomas v. State,* 841 S.W.2d 399, 403 (Tex.Crim. App.1992). *Thomas* recognized that a violation of Due Process occurs when evidence has been suppressed and the accused establishes 1) suppression by the prosecution after a request by the defense; 2) the evidence's favorable character for the defense; and 3) the materiality of the evidence. *Thomas,* 841 S.W.2d at 403. Evidence will be considered "material" for purposes of this test when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S.

667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *Thomas,* 841 S.W.2d at 404.

■ Appellant contends that if the baggie had been available for his examination he would have been able to show that his fingerprints were not on the baggie. However, even if appellant could establish the absence of his fingerprints, that alone would not create a reasonable probability that the result would be different. The evidence in this case included testimony from undercover police officer Lucas Torres, who testified that he bought the contraband from the appellant. There may be many reasons why no fingerprints could be found, and no reasonable probability that they would undermine Torres's eyewitness testimony. Because this evidence was not material, we hold that the State did not violate Due Process by failing to make it available to the appellant.

■ Appellant also argues that the testimony of officers Torres and Renteria was perjured. When the prosecution knowingly uses perjured testimony, the conviction is reversed if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). However, appellant fails to establish that the testimony complained of was perjured. The alleged perjury was the testimony that the police were using a "buy-walk" strategy, where they delay making an arrest in hopes of building a bigger case, and the officer's explanation of how the contraband was handled from the point of the sale up to its testing in the laboratory. Appellant argues that the testimony explaining the delay in his arrest was perjured because it differs from the circumstances of other "buy-walk" police tactics in other cases. Appellant fails to persuade us that minor deviations in the circumstances of police operations from one case to another establish that the police witnesses in this case have given perjured testimony. Similarly, while appellant argues that the police have "made up their testimony as they went along," and argues that it can not be explained that "these well trained undercover officers who had never before lost evidence could not up [sic] with identification cards for the cocaine," he directs us to nothing in the record to establish that the testimony regarding the handling of the contraband was false. Appellant's third point of error is overruled.

Appellant's fourth point of error argues that he received ineffective assistance of counsel. Our review of ineffective assistance of counsel claims is governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to obtain a new trial under *Strickland,* the appellant must first show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. The appellant must also show that the "errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id.* When conducting this review, we consider the entire representation by counsel, not just isolated errors. *Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App.1986). Our scrutiny of counsel's performance should be deferential, including a conscious effort to evaluate counsel's conduct from counsel's perspective at the time. *Strickland,* 466 U.S. at 689–90, 104 S.Ct. at 2065–66.

■ Appellant's first argument under this point finds fault with the failure of appellant's counsel to object to Torres's testimony because the State had failed to lay a predicate for his testimony by presenting as evidence the contraband allegedly used in the crime. We will address this point by first considering whether the evidence would have been admissible if an objection had been made. When counsel fails to object to evidence that would have been admissible anyway, counsel's assistance has not been deficient. *Prodhomme v. State,* 839 S.W.2d 494, 497 (Tex.App.—Corpus Christi 1992, no pet.). Appellant argues that rule 104(b) of the Rules of Criminal Evidence required that the contraband be present before any testimony relating to it be admitted. Appellant argues that this case is similar to *Rosales v. State,* where the relevance of records showing a prior conviction was conditioned on the introduction of evidence establishing that the defendant on trial was the same person as the one previously convicted. *Rosales v. State,*

867 S.W.2d 70, 72 (Tex.App.—El Paso 1993, no pet.). However, under rule 104(b), evidence should not be excluded merely because its relevance may depend upon the production of additional evidence at a later point in the trial. *Fuller v. State,* 829 S.W.2d 191, 197 (Tex.Crim.App.1992). We are also unpersuaded that the relevance of Torres's testimony depended on the admission into evidence of the actual contraband.

■ Appellant also argues that if his counsel had objected to Torres's testimony, the trial court would have been obligated to exclude it under Rule 403 of the Rules of Criminal Evidence. Rule 403 allows relevant evidence to be excluded when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tex.R.Crim. Evid.P. 403. Torres's testimony was so probative as to be the heart of the State's case, and we see nothing unfair, confusing, or misleading about allowing the jury to hear it. Appellant seems to argue that the absence of the actual contraband casts serious doubts on whether the alleged sale ever occurred. Appellant overlooks the reasonable possibility that the contraband was lost in good faith. The mere absence of the contraband fails to undermine Torres's testimony sufficiently to merit exclusion of the testimony under Rule 403.

Since we have determined that the objections appellant argues should have been made to Torres's testimony would have been without merit, we find no ineffective assistance of counsel in this regard.

■ Next, appellant argues that his counsel should have objected to the testimony of Keith Gibson, the chemist who tested the contraband and whose testimony helped the State establish chain of custody. Appellant argues that differences between the testimony of Torres and Gibson required the State to submit the contraband as evidence. Appellant supports this theory with citations to two cases, *United States v. Osgood,* 794 F.2d 1087 (5th Cir.1986), and *Arceneaux v. State,* 803 S.W.2d 267 (Tex.Crim.App.1990). *Arceneaux* does not support appellant's theory. The central teaching of *Arceneaux* is that, when the charge includes language specifical-

ly requiring the State to prove that an exhibit entered into evidence was cocaine, the failure to enter such an exhibit precludes a conviction. *Arceneaux* 803 S.W.2d at 271. The charge in this case did not contain any language requiring the State to produce the actual contraband used in the crime. *Arceneaux* contains no discussion of conflicting versions of the chain of custody. In any event, appellant fails to refer us to any actual discrepancy between the testimonies of Torres and Gibson, and, upon our own review, we are unable to locate any discrepancies. Although appellant argues that this testimony, too, should have been excluded under Rule 403, here again we consider Gibson's testimony about the testing of the contraband to have substantial probative value and little, if any, prejudicial, confusing, or misleading effect. Therefore, appellant's claim that his counsel should have objected to this testimony is overruled.

Next, appellant argues that he received ineffective assistance of counsel because his counsel operated under a conflict of interest. Appellant's theory is that his counsel made such grave strategic errors that those errors can only be understood as the product of one working under a conflict of interest. The errors that appellant contends demonstrate a conflict of interest were the failure to require the State to produce the physical evidence before trial, the failure to require the production of that evidence before Torres's testimony, and telling the trial judge that appellant's motion for production of the contraband was denied, when in fact it had been granted. As we have discussed above, the State was not required to produce the cocaine allegedly used in the crime when it had been lost after laboratory testing and no bad faith on the part of the police has been shown. *Lake v. State,* 577 S.W.2d at 246. Therefore, the failure of appellant's trial counsel could not have required the State to produce the evidence.

■ The comment to the trial judge from appellant's counsel about the pre-trial motion to independently test the contraband being denied was made in the context of attempting to distinguish the facts of *Lake* from those of

the present case. If anything, counsel here was being *too* zealous on behalf of his client, misrepresenting the procedural history of the case to the judge in an attempt to advance his client's interests. Appellant suggests that this comment waived his right to act upon the granted motion to inspect the cocaine. However, this interpretation mistakes the context and purpose of counsel's remark. The remark was made after the State had rested its case. It seems that appellant's counsel had decided that, rather than pressing the State to produce the cocaine so that the defense could conduct independent tests, a better strategy was to rely on the "general rule" that the State must produce the drugs used in a crime and try to show why the exceptions recognized in *Lake* should not apply.

■■■■ The next instance appellant points to as deficient performance by his counsel is the failure to object to the State calling Officer Rey Renteria, who appellant claims was not on the witness list. Appellant's motion for production of the State's witness list was granted and the record shows that appellant was given a handwritten list, although that list is not reproduced in the record. The general rule in this area is that the State is required to provide the defense with notice of the witnesses it intends to call upon request. *Martinez v. State*, 867 S.W.2d 30, 39 (Tex.Crim.App. 1993), *cert. denied*, 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994). While we are unable to determine whether Renteria's name was on the witness list, it seems clear that appellant did know Renteria would be called as a witness. During a pretrial hearing, appellant's counsel said "I know well enough to state that undoubtedly the State will call Mr. Torres, Mr. Mann, and Mr. Renteria as witnesses at the trial." Since appellant's counsel had stated that he knew Renteria would testify, it would have been pointless for him to object to Renteria on the grounds that he did not have notice that Renteria would testify.

■■■■ The next alleged error on the part of appellant's counsel was his failure to call as witnesses appellant's mother and Officer Willingham, who arrested appellant when appellant came to the police station to pay some traffic tickets. Generally, an attorney's strategic decision to not call a witness will be reviewed only if there was no plausible basis for not calling the witness. *Brown v. State*, 866 S.W.2d 675, 678 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd); *see also Ordonez v. State*, 806 S.W.2d 895, 900 (Tex.App.—Corpus Christi 1991, pet. ref'd.) (failure to call witnesses whose testimony is of marginal benefit does not amount to ineffective assistance of counsel when totality of counsel's representation was acceptable). Appellant's theory is that the State's explanation that Officer Willingham knew appellant was coming to the police station based on an anonymous tip was fabricated since no one knew appellant was coming to the police station except for him and his mother. Appellant expected his mother to testify that no one else knew appellant was coming, thus exposing Willingham's anonymous tip as a fabrication. However, this testimony would have been entirely unhelpful to appellant. It is simply of no consequence how the police knew appellant would be available for arrest.

■■■■ Next, appellant argues that his counsel should have objected to leading questions asked by the prosecutor. The questions appellant considers improperly leading all deal with the explanation of the police as to why appellant was not arrested immediately after the alleged drug sale was made. Whether these questions were leading or not, they did not prejudice appellant's case. The State did not have any burden to explain its tactics in conducting the undercover operation or its decision regarding when to arrest the appellant. The State was burdened with proving the elements of the offense as set out in the indictment. None of the questions appellant describes as leading touch on any of the elements of the offense appellant was charged with. Consequently, appellant would not have been helped in any significant way by objecting to these questions. Furthermore, we are mindful that it may actually be good trial strategy to avoid objecting to inconsequential testimony so as to avoid antagonizing the jury with frequent objections.

■ Appellant also argues that his counsel asked questions that allowed the jury to infer that the defense was conceding that the appellant had been at the scene with the informant as described in the testimony of the State's witnesses. Here again, we find no fault in counsel's strategy. One of the questions complained of asked whether the informant knew that appellant had recently received a large payment from Social Security. Establishing that appellant had just received the Social Security payment was part of the defense strategy to explain why appellant had a large amount of cash with him, thereby dispelling possible inferences that he got the money from selling cocaine.

■ Similarly, appellant complains of his counsel's statement during cross examination and again in closing argument that the cocaine was "lost," because this statement essentially conceded that there was actually cocaine obtained by the police in this case. Appellant feels it would have been better strategy to deny the existence of any cocaine. At the time appellant's counsel referred to the cocaine as lost, he was vigorously cross-examining Officer Renteria about the chain of custody for the cocaine, trying to establish that the State could not account for the chain of custody and could not establish that the material tested and found to be cocaine was the same material obtained from the appellant. In this context, referring to the cocaine as "lost" helped the appellant's case by emphasizing the carelessness of the police. There was never any evidence to contradict the State's evidence of Torres's purchase of cocaine from the defendant. We see no strategical error in focusing the defense's strategy on challenging the chain of custody when the evidence was eventually lost.

■ Finally, appellant complains that his counsel failed to conduct an independent investigation of the evidence as required by *Ex parte Langley*, 833 S.W.2d 141, 143 (Tex. Crim.App.1992). However, *Langley* does not require an *independent* investigation, only that counsel conduct a "proper investigation." *Id.* We are aware of no case which holds that defense attorneys in drug cases are required to conduct their own analysis of substances already determined by the police laboratory to be illicit drugs. In this case, appellant's counsel deposed several witnesses, and made several discovery motions, including a motion for production of witness statements, a motion for discovery of recorded calls to the police station and dispatch radio communications, and a motion for production of exculpatory and mitigating evidence. We hold that appellant's counsel conducted a sufficiently proper investigation to preclude a holding of ineffective assistance of counsel.

The record in this case reveals that appellant's counsel adequately advocated his case. In addition to the pre-trial motions just mentioned, counsel's cross examination was vigorous, and he tried to parlay the State's inability to produce the cocaine at trial into grounds for an acquittal. We hold that appellant has not satisfied the *Strickland* test for ineffective assistance of counsel. Appellant's fourth point of error is overruled.

Appellant's fifth point of error complains that the evidence was insufficient to support his conviction. When considering a point of error on the insufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict to determine if a rational trier of fact could have found the essential elements of the crime to have been established beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159–60 (Tex. Crim.App.1991). The indictment in this case accused appellant of intentionally and knowingly delivering cocaine in an amount of less than twenty-eight grams. Appellant argues that the evidence was insufficient because no cocaine was produced at trial, the State failed to show a motel registry listing him as present at the motel where the incident occurred, the confidential informant did not appear as a witness, and because the State's explanation for why appellant was not arrested at the time of the crime was not credible.

■ The evidence in this case, viewed in the light most favorable to the verdict, was clearly sufficient to support the conviction. The jury in this case heard testimony from Torres, a police officer, that when he entered

the motel room the appellant asked him "how much do you want?" Torres replied that he wanted "an eightball." Torres testified that "an eightball" means approximately 3.5 grams of cocaine. Appellant then went and retrieved a clear plastic baggie containing what appeared to be approximately 3.5 grams of cocaine. Torres asked for the price, and was told by appellant that it was $150. Torres then paid Velasquez and left the scene. Although the baggie was eventually lost, the police were able to account for the chain of custody at least as far as the test lab, which found the substance in the baggie to contain cocaine.

None of the deficiencies appellant finds in the State's case are significant enough to require reversal on grounds of insufficient evidence. The State did not need to present the motel registry as proof that appellant was at the motel because the Torres testified as an eyewitness to appellant's presence. Similarly, Torres's testimony left no need for any testimony from the confidential informant. Whether the police chose to arrest appellant at the time the crime was committed or at a later time, and their explanation for the timing of the arrest have no bearing on the evidence that appellant intentionally and knowingly delivered cocaine. Finally, appellant's argument that the State was required to present the cocaine as evidence at trial is defeated by the *Lake* case discussed at the beginning of this opinion. Appellant's fifth point of error is overruled.

Appellant's final point of error argues that the trial court erred by failing to hold a hearing on his motion for new trial and allowing it to be overruled by operation of law. As we discussed under appellant's first point of error, the record does not reflect that appellant ever sought a hearing on his motion for new trial before it was overruled by operation of law. When the movant fails to request a hearing on a motion, the trial court is not obligated to hold a hearing and no error is committed if the motion is overruled by operation of law. Furthermore, even if a hearing had been requested, the trial court could have rightfully refused hold a hearing because the grounds stated in the motion did not require the development of evidence out-

side the record. *Darrington v. State*, 623 S.W.2d 414, 416 (Tex.Crim.App.1981). Appellant's sixth point of error is overruled.

The judgment of the trial court is AFFIRMED.