COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-195-CR

 

 

WILLIAM MACON                                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 78TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In five points, Appellant
William Macon brings a pro se appeal of his conviction for possession of a
deadly weapon in a penal institution.  We
affirm.

 

 

 








BACKGROUND

On June 20, 2001, Appellant,
a former truck driver with a seventh-grade education, was indicted for
possession of a deadly weapon in a penal institution.  He chose to represent himself at trial.  The jury trial began on March 7, 2005.

Appellant testified on his
own behalf.  He stated, AWhen you see the videotape you=ll see me holding it [the weapon],@ and admitted possessing the weapon to defend himself.[2]  The jury found him guilty of the charged
offense and, finding the enhancement paragraphs true, assessed twenty-five
years= confinement as punishment.  The
trial court sentenced him accordingly.

DISCUSSION

Appellant=s pro se brief contains five issues, complaining that his indictment
was invalid, that the trial court erred by failing to reshuffle the jury after
granting his motion for jury shuffle and by denying his motions to suppress and
for a speedy trial, and that he received ineffective assistance of counsel.

 

 








Ineffective Indictment

In his fourth point,
Appellant claims that the trial court lacked jurisdiction because the
indictment did not meet the requirements for a valid indictment under the Texas
Code of Criminal Procedure or the Texas Constitution. Specifically, he argues
that the county and state of the alleged offense were completely omitted.

Article 21.02 of the Texas
Code of Criminal Procedure sets forth the requisites of a valid
indictment.  Tex. Code Crim. Proc. Ann. art. 21.02 (Vernon 1989).  The indictment must show Athat the place where the offense was committed is within the
jurisdiction of the court in which the indictment is presented.@  Id. art. 21.02(5).  Appellant=s indictment states the following:

The
Grand Jury, of Wichita County, State of Texas, duly organized as such at
the January Term A.D. 2001, of the 30th District Court for said
county, in said court at said term does present that [Appellant], on or about
the 24th day of August, A.D. 2000, and before the presentment of
this indictment, did then and there, while confined in a penal
institution, namely, the Allred Unit, intentionally and knowingly possess and
conceal in said penal institution a deadly weapon, to-wit: a piece of metal
sharpened to a point on one end with a piece of cloth wrapped around the other
end. [Emphasis added.]

 








With respect to their use in
charging instruments, the words Athen and there@ are words
of reference.  Ex parte Hunter,
604 S.W.2d 188, 190 (Tex. Crim. App. 1980). 
Here, Athere@ refers back to AWichita County,
State of Texas@ in the
opening phrase.  See id.  (stating that such words of reference in the
indictment after the county has been named are sufficient to allege that the
offense occurred in that county).  Therefore,
we hold that the indictment sufficiently alleged the place of the offense and
complies with article 21.02(5).  Id.  We overrule Appellant=s fourth point.

Jury Shuffle

In his third point, Appellant
argues that the trial court erred by failing to reshuffle and redraw the jury
list after it granted his motion for a jury shuffle.

Article 35.11 of the code of
criminal procedure provides the defendant with a right to a shuffle of the jury
panel.  See Tex. Code Crim. Proc. Ann. art. 35.11
(Vernon 2006); Ex parte Daigle, 848 S.W.2d 691, 692 (Tex. Crim. App.
1993).  But refusal of the trial judge to
comply with a jury shuffle request constitutes reversible error only when the
request is timely.  See id.  The appropriate time for a motion to shuffle
the jury is after the jurors have been qualified but before voir dire
begins.  See Velasquez v. State,
941 S.W.2d 303, 307 (Tex. App.CCorpus Christi 1997, pet. ref=d).  The trial judge has no duty
to assert the defendant=s rights for
him when the defendant fails to assert them. 
Id.








In Velasquez, the
court granted the appellant=s motion for a jury shuffle approximately five months before the jury
was qualified and brought in for voir dire. 
Id.  In overruling the
appellant=s jury
shuffle point, the appellate court observed that there was no jury to shuffle
when the motion was granted and that the record did not indicate that the
appellant had ever attempted to assert his right to the jury shuffle at the
appropriate time.  Id.

Like Velasquez, here,
Appellant filed his motion for jury shuffle long before a jury existed to
shuffle, on December 16, 2003.  At the
pretrial hearing on February 6, 2004, Appellant moved to shuffle the jury and
the court responded, AOkay.  That will be granted.@  However, at trial on March 7,
2005, Appellant did not mention the jury shuffle again until after voir dire
had concluded.  Because Appellant failed
to assert his right to the jury shuffle at the appropriate time, he waived that
right.  We overrule Appellant=s third point.

Motion To Suppress

In his fifth point, Appellant
claims that the trial court erred by denying his Amotion to suppress the complaint and statements.@  He asserts that if the trial
court had granted a hearing outside the jury=s presence, the hearing would have revealed that the officers who
testified for the State gave false and conflicting testimony.








Appellant testified at his
pretrial hearing that he was not attempting to suppress statements that he had
made.  Rather, he wanted to suppress Athe statements . . . made by the charging officersCthe correctional officers; the witnesses, the State=s witnesses.@  He argued that the statements should be
suppressed Abecause the
truthfulness of that information is the basis for this caseCand is the basis for the indictment in this case.@

Suppression is used to
exclude evidence that has been illegally obtained.  See Pierce v. State, 32 S.W.3d 247,
253 (Tex. Crim. App. 2000); see also Tex.
Code Crim. Proc. Ann. art. 38.23 (Vernon 2005).  Here, testimony was not illegally obtained,
nor was that the basis of Appellant=s objection.  Under the Texas
Rules of Evidence, all relevant evidence is generally admissible, absent
constitutional or statutory provision to the contrary.  See Tex.
R. Evid. 402.  Because the jury is
the exclusive judge of the credibility of witnesses and the weight to be given
their testimony, that is, whether such testimony is truthful or false, the
trial court did not err by denying Appellant=s motion to suppress.  See
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).  We overrule Appellant=s fifth point. 

Sixth Amendment Claims

In his first point, Appellant
argues that the trial court erred by not granting him a new trial based on
ineffective assistance of counsel.  In
his second point, he asserts that the trial court erred by denying his motion
for a speedy trial, thus violating his right to a speedy trial under the Sixth
Amendment and under article I, section 10 of the Texas Constitution.








Ineffective Assistance Of Counsel

To establish ineffective
assistance of counsel, appellant must show by a preponderance of the evidence
that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005). 
Ineffective assistance of counsel may result when an attorney labors
under a conflict of interest.  See
Monreal v. State, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997) (holding defendant
failed to prove actual conflict of interest). 
A defendant can demonstrate a violation of his right to the reasonably
effective assistance of counsel if he can show (1) that his counsel was
burdened by an actual conflict of interest and (2) that the conflict had an
adverse effect on specific instances of counsel=s performance.  Id.,
citing Cuyler v. Sullivan, 446 U.S. 335, 348‑350, 100 S. Ct. 1708,
1718‑1719 (1980).  An Aactual conflict of interest@ exists if counsel is required to make a choice between advancing his
client=s interest in a fair trial or advancing other interests to the detriment
of his client=s
interest.  See James v. State, 763
S.W.2d 776, 779 (Tex. Crim. App.1989).








Appellant=s ineffective assistance claim centers on the Aconflict of interest@ language used by the trial court in its August 22, 2005 amended order
for court-ordered appellate counsel.  He
asserts that the order admits that there was a conflict of interest with the
state-provided defense counsel and that this violated his right to effective
assistance of counsel.  The order reads
as follows:

On the 23rd day of March, 2005, the Court appointed Jim Rasmussen for
purposes of representing the defendant on appeal.  The appointment is confirmed.  The Court would clarify by this Order, that
Mr. Rasmussen was appointed for the following reasons:     

(1) By hearings of October 10, 2003,[3]
and March 8, 2005,[4]
it became clear to the Court, and the Court so finds, that this case is being
appealed and there is a conflict of interest, specifically including an
inability and refusal to work together between the Defendant and State
Defense Counsel that would result in ineffective assistance of counsel; and

 

(2) The requirements of Article 26.05 have been
met, and Wichita County shall pay the first $250.00 of Mr. Rasmussen=s fees
and expenses, and the balance shall be paid by the State of Texas. [Emphasis
added.]

 








Appellant filed a pro se
motion to dismiss his trial counsel on July 22, 2002, and was represented by
his second appointed attorney at the pretrial Faretta hearing on October
10, 2003.  At that hearing, Appellant
requested the right to proceed pro se, stating that he had Abeen having some problems with State Counsel for Defenders investigating
my case.@ [Emphasis added.]  After the
court comprehensively admonished Appellant, warning him of the disadvantages of
self‑representation, Appellant told the court, AI choose to represent myself,@ and he did so at trial.

A review of the record
reveals that Appellant=s request
for appointed appellate counsel on March 8, 2005 centered on his distrust of
state employees.  After the trial judge
indicated that he intended to appoint appellate counsel from the State public
defender=s office, Appellant replied:

Would it be asking too much
that the state would appoint someone from Wichita County?  Because, I mean, that=s one of the problems that I had at first with the state counsel for
offenders being pretty muchCthe State of Texas being the author of offense, the State of Texas
being the investigator of the offense, the State of Texas controlling the case
pretty much from beginning to finish. . . . I feel that it isCmight create a circumstance to where the representation may not be as
sufficient as it would if there was someone outside the boundaries of the state
counsel forCoffice of
the state counsel for offenders handling the case. [Emphasis added.]

The trial judge said that he would look into appointing
someone local, his main concern being reimbursement in going outside the state
system.








A clear reading of the
amended order, in its entirety, indicates that the conflict referenced was
Appellant=s inability
and refusal to work with state-provided defense counsel, necessitating the
appointment of an attorney outside of the state system.  Moreover, the use of the conditional verb Awould result,@ the purpose
of the amended order, the appointment of appellate counsel, and the reference
to article 26.05 of the code of criminal procedure, which pertains to
compensation of counsel appointed to defend, all indicate that the trial judge
was in no way referring to trial counsel=s assistance.  See Tex. Code Crim. Proc. Ann. art. 26.05
(Vernon 1989).

Not only did Appellant fail
to establish any actual conflict of interest from the amended order=s language, see Monreal, 947 S.W.2d at 565, but the fact that
he acted as his own counsel at trial would preclude any other ineffective
assistance claims, Faretta v. California, 422 U.S. 806, 834 n.46, 95 S.
Ct. 2525, 2541 n.46 (1975); Williams v. State, 549 S.W.2d 183, 189 (Tex.
Crim. App. 1977) (stating that when an accused elects to represent himself he
cannot complain that the quality of his own defense amounted to a denial of
effective assistance of counsel).[5]  We overrule Appellant=s first point.








Motion For Speedy Trial

Appellant was indicted on
June 20, 2001 and tried on March 7, 2005. Appellant first raised his speedy
trial issue by filing a pro se motion on March 25, 2004.  On May 3, 2004, the State filed a motion for
continuance, seeking an additional thirty days, which the trial court
granted.  Appellant filed an objection to
that continuance on May 12, 2004, and again on July 7, 2004, after the trial
court set trial for November 15, 2004.  He
raised another motion for speedy trial at the pretrial hearing on March 7, 2005
as part of his motion to quash the indictment. 
The trial court denied the motion on March 7, 2005.         When reviewing a trial court=s ruling on a speedy trial claim, we review legal issues de novo but
give deference to a trial court=s resolution of factual issues. 
Kelly v. State, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005).  We give deference not only to a trial court=s resolution of disputed facts but also to its drawing of reasonable
inferences from the facts.  Id.  The Sixth Amendment to the United States
Constitution guarantees the accused=s right to a speedy trial.  U.S.
Const. amend. VI.  In addition, article I, section ten of the
Texas Constitution guarantees the accused in all criminal prosecutions the
right to a speedy and public trial.  Tex. Const. art. I, ' 10.  If a violation of the
speedy trial right is established, the remedy is dismissal of the
prosecution.  Strunk v. United States,
412 U.S. 434, 440, 93 S. Ct. 2260, 2263 (1973).








In determining whether an
accused has been denied his right to a speedy trial, we use a balancing test to
weigh the conduct of both the prosecution and the defendant.  See Barker v. Wingo, 407 U.S.
514, 530, 92 S. Ct. 2182, 2191-92 (1972); Dragoo v. State, 96 S.W.3d
308, 313 (Tex. Crim. App. 2003).  The
factors to be weighed include the length of the delay, the reason for the
delay, the defendant=s assertion
of his speedy trial right, and the prejudice to the defendant resulting from
the delay.  Barker, 407 U.S. at
530, 92 S. Ct. at 2192; Dragoo, 96 S.W.3d at 313.  No single factor alone is necessary or
sufficient to establish a violation of the right to a speedy trial.  Barker, 407 U.S. at 533, 92 S. Ct. at
2193; Dragoo, 96 S.W.3d at 313. 
Because Appellant lost in the trial court on his speedy trial claim, we
must presume that the trial court resolved any disputed fact issues in the
State=s favor, and we are required to defer to these implied findings of
fact that the record supports.  State
v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). 








We measure the length of the
delay from the time Appellant was formally accused.  See Dragoo, 96 S.W.3d at 313.  We consider the other three factors only when
the delay is long enough to be presumptively prejudicial to the defendant.  Emery v. State, 881 S.W.2d 702, 708
(Tex. Crim. App. 1994), cert. denied, 513 U.S. 1192 (1995).  In general, delay approaching one year is
sufficient to trigger a speedy trial inquiry. 
See Dragoo, 96 S.W.3d at 314. 
Here, Appellant was indicted on June 20, 2001 and tried on March 7,
2005. Because the delay between indictment and his first motion for a speedy
trial was longer than one year, we continue the inquiry.  See id.

When assessing the second
factor, the reason for the delay, we assign different weights to different
reasons.  Barker, 407 U.S. at 531,
92 S. Ct. at  2192.  A delay attributable to the defendant may
constitute a waiver of his right to a speedy trial and, therefore, weighs
heavily against him.  See Munoz,
991 S.W.2d at 822.  The State has the
initial burden of justifying a lengthy delay. 
Emery, 881 S.W.2d at 708. 
Here, the State gave no reason for the lengthy delay.[6]  In the absence of an assigned reason for the
delay, a court may presume neither a deliberate attempt on the part of the
State to prejudice the defense nor a valid reason for the delay.  Dragoo, 96 S.W.3d at 314. 








In its January 4, 2005 order,
the trial court found that the trial setting of November 15, 2004 was continued
Aprimarily because [Appellant=s] files pertaining to this case were >locked up= the weekend
before trial and [Appellant] was denied access to those files.@  This weighs in Appellant=s favor.  However, Appellant
also filed his application for subpoenas on November 15, 2004, and the trial
judge observed at trial that one of the reasons that the case was continued
from November 2004 until March 2005 was because Appellant sought additional
time to subpoena witnesses.  Additionally,
he insisted on at least two changes of counsel and then chose to represent
himself pro se; any delay caused by these choices is chargeable only to
Appellant. 

We next consider Appellant=s assertion of his speedy trial right. 
Appellant first raised his speedy trial issue almost three years after
his indictment.  This assertion was
extremely tardy and weighs heavily against Appellant.  See Kelly, 163 S.W.3d at 730 (stating
that assertion was tardy when it occurred a year after arrest).  After Appellant asserted this right, the
trial court granted the State a continuance and set trial for November 15,
2004, a date almost eight months from Appellant=s motion for a speedy trial. 
Appellant objected to the continuance and the late trial setting and
raised his objection again at the pretrial hearing on March 7, 2005.  Therefore, though tardy, Appellant did assert
his right to a speedy trial.








Finally, we consider the
prejudice to the defendant resulting from the delay.  Prejudice should be assessed in the light of
the interests of defendants which the speedy trial right was designed to
protect.  Barker, 407 U.S. at 532,
92 S. Ct. at 2193.  There are three such
interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize
anxiety and concern of the accused; and (iii) to limit the possibility that the
defense will be impaired.  Id. at
532, 92 S. Ct. at 2193.  Of these, the
most serious is the last, because the inability of a defendant adequately to
prepare his case skews the fairness of the entire system.  Id. at 532, 92 S. Ct. at 2193.

Appellant alleged that the
delay caused him harm by preventing him from effectively defending himself and
from obtaining parole.  Parole is not on
the list of interests the right was designed to protect.  Id. at 532, 92 S. Ct. at 2193.  Appellant was incarcerated from indictment
through trial on an unrelated charge, effectively negating the concern for
pretrial incarceration.  See id. at
532, 92 S. Ct. at 2193.  Because he
admitted at trial that he possessed the weapon in prison, his inability to
obtain witnesses to testify that he was not the weapon=s owner did not hamper his ability to adequately prepare his
case because ownership of the weapon was irrelevant to the charged
offense.  See Tex. Penal Code Ann. 46.10.








Appellant also alleged that
the State procrastinated to hinder the defense and stall prosecution Ain hopes of finding inmate Billy Blackmon, who was released, to
testify on behalf of the State of Texas and against [Appellant].@  A valid reason, such as a
missing witness, will justify delay and weigh in the State=s favor.  See Barker, 407
U.S. at 531, 92 S. Ct. at 2192.  Also, on
January 3, 2005, Appellant filed his own application to subpoena Billy
Blackmon.

Appellant did not raise his
objection until three years had passed and then at least five months were
attributable to Appellant=s own delay
in issuing subpoenas.  No evidence was
presented that the State acted intentionally to cause a delay.  Appellant experienced minimal prejudice
because he was already incarcerated. 
Deferring to the trial court=s implied findings of fact, we conclude that, on the whole, the
balance weighs against Appellant.  See
Munoz, 991 S.W.2d at 821, 825.  We
overrule Appellant=s second
point.

CONCLUSION

Having overruled all of
Appellant=s points, we
affirm the trial court=s judgment.

PER CURIAM

 

PANEL F: 
HOLMAN, LIVINGSTON, and DAUPHINOT, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  January 11, 2007











[1]See Tex. R.
App. P. 47.4.

 





[2]A person commits the offense of
possession of a deadly weapon in a penal institution if, Awhile confined in a penal
institution, he intentionally, knowingly or recklessly possesses or conceals a
deadly weapon in the penal institution.@  Tex. Penal Code Ann. ' 46.10(a)(2) (Vernon 2003).





[3]Appellant=s pretrial Faretta hearing
occurred on October 10, 2003.





[4]At the punishment phase on March 8,
2005, Appellant requested that the trial judge appoint an attorney Afor appeal purposes.@





[5]The March 7, 2005 trial was not
Appellant=s first pro se trial.  His first foray into pro se representation
also ended in conviction.  Although he
had received appointed counsel for his appeal in the case before us, in
November 2005, Appellant sought once more to represent himself and the case was
abated and returned to the trial court to determine whether Appellant should be
allowed to do so.  After a hearing, in
which the trial court again sternly admonished Appellant of the risks of self‑representation,
the trial court issued an order on November 30, 2005, finding that Appellant
truly desired to represent himself on appeal and that he was competent to make
that decision. Appellant filed his pro se brief on July 3, 2006.





[6]The appellate brief submitted by
the State addresses only Appellant=s ineffective assistance of counsel claim, not his speedy
trial claim.