

# NUMBER 13-11-00688-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JONATHAN OZUNA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

### On appeal from the 130th District Court
### of Matagorda County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant, Jonathan Ozuna, appeals his conviction for one count of theft from a human corpse, a state-jail felony. *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(B) (West 2011). Appellant stole a wedding ring from the body of a decedent stranger whose body was lying in a casket in a chapel at a funeral home. After appellant pleaded guilty in the presence of the jury, the trial court held a jury trial on punishment. In accordance with

the jury's verdict, the trial court sentenced appellant to eighteen months of confinement in the Texas Department of Criminal Justice, State Jail Division, and assessed a $7,500 fine. By his sole issue, appellant argues that his counsel provided ineffective assistance during the punishment phase of trial by not further objecting to the admission of certain testimony. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After appellant pleaded guilty, the State presented additional evidence concerning appellant's guilt. The State presented testimony from the funeral-home director and the decedent's son. The jury also viewed a video that showed appellant standing over the decedent's body for more than a minute, removing the decedent's wedding ring, placing it in his waistband, and concealing the decedent's hand with fabric that was inside the casket. The decedent was approximately eighty years old, and the theft occurred before her funeral service.

The State further presented evidence that approximately seven days later, when law-enforcement officers came to arrest appellant at his home, he ran to his backyard and hid in tall grass. Appellant initially denied that he stole the ring, but after officers showed a photograph of the decedent in her casket, he hid his face and confessed. Appellant led officers to a store at a mall where he sold the ring for $150. The ring was recovered and returned to the decedent's family.

Appellant testified at length in his defense during the punishment phase of the trial. Appellant testified that while he was physically present, he was not mentally present when he took the wedding ring. He testified that he suffered from Crohn's disease,

2

rheumatoid arthritis, and pancreatitis. He testified that his Crohn's disease was so severe and painful that he could not finish college or hold a stable job. As a result, he essentially became a stay-at-home dad to his four children, who were ages twelve and older. Appellant testified that he received $420 per month in disability income.

Appellant testified that over the course of several years, he became addicted to the prescription medications that he took for his Crohn's disease and rheumatoid arthritis, and that his addiction compelled him to steal the ring. Appellant testified that he started taking increased amounts of medication to get pain relief, but that he also started using the medications to escape life's daily problems. He testified that he was high on Lortab, Lorcet, and Norco when he stole the ring and that he had been high for months leading up to the theft. Appellant testified that as he became sober, he started to feel remorse for stealing the ring, but conceded on cross-examination that he did not turn himself in or even confess when he was initially confronted by law-enforcement officers. Appellant testified that he was not really guilty of theft, because his addiction to medications caused him to take the ring.

Appellant testified that he did not hide in the backyard when officers arrived at his home. Rather, his prescription medications made him feel paranoid and afraid, so he went outside. He did not get up because he did not feel well enough. Appellant testified that he has been rehabilitated of his prescription-drug addiction because stealing the ring caused him to "hit rock bottom" and to recognize the severity of his addiction.

Appellant testified that he has been arrested in the past for a marihuana offense and for stealing a rental video. Appellant admitted that he had viewed decedent

3

strangers on other occasions. He said that he was "not normal" because of the medications. The State further elicited testimony from appellant that he was serving probation for an offense that arose in Brazoria County and that he violated the terms of his Brazoria County probation during the month before trial.

The State called Deputy Bill Orton as a rebuttal witness. Deputy Orton testified that he was a deputy constable for the trial court and that he also suffered from Crohn's disease. He stated that he previously battled addiction to the prescription medications he took for the disease, but never felt that Crohn's disease compelled him to commit a crime. In relevant part, Deputy Orton testified as follows:

Q.	Deputy Orton, do have you currently, excuse me, have you previously been diagnosed as having Crohn's Disease?

A.	Yes, sir, in [']95.

Q.	So, you are aware that you had Crohn's Disease for some 16 years?

A.	Yes, sir.

Q.	And during the time that you have been suffering from Crohn's Disease have you been taking some pain medications?

A.	Yes, sir.

Q.	What are they?

A.	Everything that the defendant had told you that he was on and more.

Q.	And during that time have you been taking these same drugs for 16 years?

A.	Yes, sir.

Q.	When did you begin taking this these particular drugs?

A.	During the times that I had flare ups with the Crohn's Disease when I

4

was hospitalized, which was a period of about 9 months. I was in the hospital.

Q.    And as a result of having taking these particular drugs did you develop addictions to these drugs?

A.    Yes, sir, I was.

DEFENSE COUNSEL:   Objection.   Relevance.

TRIAL COURT:   You have a response to that?

PROSECUTOR:   I believe the relevance is to how his addiction is the causation for his committing this crime.   Inquiring about this addiction is very relevant.

TRIAL COURT:   Overruled.

Q.    And are there some addictions to the pain medications?

A.    Yes, sir, there is.

Q.    And as a result of the addictions did they in turn cause you then to commit various crimes?

A.    No, sir, they did not.

Q.    Were you required—was it necessary for you to go through some rehabilitation to resolve the addictions?

A.    I went through counseling with my doctor over the addiction.   The addiction that I was—was primarily on IV pain medication, which was I believe somewhat stronger than some of the stuff that he was on.

Q.    So, the addictions you suffered from were from the pain medications when you were actually hospitalized for the Crohn's.

A.    Both hospitalized and when I would go home I was still on them.   I was bed ridden at home.

Q.    And during the course of your disease and the study of your disease, are you familiar were other folks, some of the other studies that involve people with Crohn's Disease?

5

A.    Yes, sir, I am.

Q.    Is the commission of crime something that we can commonly expect from people with Crohn's Disease?

A.    Not to my knowledge that it would be an explanation that I would go through—

DEFENSE COUNSEL:   Objection.   Move to strike.   He's not been proved up as an expert nor is this response.

TRIAL COURT:   Agreed.   Then jurors, disregard any purported expert testimony coming from this witness.

Q.    In your experience that your [sic] aware of have people committed these types of crimes?

A.    No, sir.

Q.    And during the time that you were—you had been diseased have you been able to hold a steady job?

A.    Yes, sir.

Q.    Are you on disability?

A.    No, sir.

Q.    Do you find life so overwhelming that you lay down on the couch all day long?

A.    No, sir.

Q.    Do you find yourself in times when you're trying to determine whether or not to steal jewelry from dead people?

A.    No, sir.

Q.    Have you ever during your time with Crohn's disease, considered the idea that you needed to steal jewelry from a dead person?

A.    No, sir.

## II. DISCUSSION

In his sole issue, appellant contends the record shows that his trial counsel provided ineffective assistance because "he failed to further object to Deputy Orton's entire testimony." Specifically, appellant argues that defense counsel should have further objected under Texas Rules of Evidence 401 ("Definition of 'Relevant Evidence'"), 402 ("Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible"), and 403 ("Exclusion of Relevant Evidence on Special Grounds").

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also* TEX. CODE CRIM. PROC. ANN. art. 1.051 (West 2010). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prove an ineffective assistance of counsel claim, a defendant must show (1) by a preponderance of the evidence, that counsel's performance was so deficient that he was not functioning as acceptable counsel under the Sixth Amendment, and (2) there is a reasonable probability that, but for counsel's error or omission, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687–96; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The defendant must overcome the strong presumption that the challenged action might have been sound trial strategy. *Thompson*, 9 S.W.3d at 813. We will not speculate to find trial counsel ineffective when the record is silent as to counsel's reasoning or strategy. *Godoy v. State*, 122 S.W.3d 315, 322 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

When, as in this case, there is no evidentiary record developed at a hearing on a

7

motion for new trial, it is extremely difficult to show that trial counsel's performance was deficient. *See Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *see also Aldaba v. State*, No. 14-08-00417-CR, 2009 WL 1057685, at *5 (Tex. App.—Houston [14th Dist.] April 16, 2009, pet. ref'd). If there is no hearing, or if counsel does not appear at the hearing, an affidavit from trial counsel becomes almost vital to the success of an ineffective-assistance claim. *Stults v. State,* 23 S.W.3d 198, 208–09 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The Texas Court of Criminal Appeals has stated that it should be a rare case in which an appellate court finds ineffective assistance on a record that is silent as to counsel's trial strategy. *See Andrews v. State,* 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). On a silent record, this Court can find ineffective assistance of counsel only if the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Appellant's ineffective-assistance claim fails because he did not meet his burden under either prong of the *Strickland* test. With respect to the first *Strickland* prong, to argue successfully that trial counsel's failure to object amounted to ineffective assistance of counsel, appellant must demonstrate, at a minimum, that the trial court would have committed error in overruling the objection in question. *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Jagaroo v. State*, 180 S.W.3d 793, 800 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("Before this court may conclude counsel was ineffective for failure to make an objection, appellant must show the trial court would have erred in overruling the objection."); *see also Brambila v. State*, No. 14-08-00371-CR,

8

2009 WL 2356674, at *4 (Tex. App.—Houston [14th Dist.] July 28, 2009, pet. ref'd) (mem. op., not designated for publication) ("the failure to object cannot form the basis of an ineffective-assistance claim unless, at a minimum, the trial court would have erred in overruling the objection").   Appellant has failed to make this showing.

Appellant argues that trial counsel should have objected to all of Deputy Orton's testimony under Texas Rules of Evidence 401, 402, and 403 so that the testimony would have been excluded or alternatively, so that error would have been preserved for appellant to challenge the admissibility of the testimony under rules 401, 402, and 403 in this direct appeal.   *See* TEX. R. EVID. 401, 402, 403.   However, appellant offers no argument or authority to show that the trial court would have erred in overruling an objection under rules 401, 402, or 403.   *See* TEX. R. APP. P. 38.1(i); *see also Stepp v. State*, No. 14-05-00371-CR, 2007 WL 608977, at *7 (Tex. App.—Houston [14th Dist.] March 1, 2007, pet. ref'd) (mem. op., not designated for publication) (concluding defendant waived ineffective-assistance claim premised on failure to object because he did not identify the objection trial counsel should have made and did not provide supporting argument or authority showing the trial court would have erred in overruling an objection to the testimony).   Moreover, the record shows that the trial court overruled appellant's relevance objection (rule 402) to Deputy Orton's testimony.   Appellant did not raise this issue on appeal, though he argues that one reason defense counsel should have lodged a relevance objection was to preserve the claim for appeal.   *See* TEX. R. EVID. 402.

Further, the record shows that defense counsel's failure to object may have been

9

sound trial strategy.   Deputy Orton's testimony was very brief.   The portion in question spans less than four full pages of the reporter's record.   Defense counsel objected once early during the testimony that Deputy Orton's testimony was irrelevant.   After allowing the State to respond that Deputy Orton's testimony was relevant to appellant's claim that appellant's addiction to prescription medicine that he took for his Crohn's disease caused him to commit the crime, the trial court overruled appellant's objection.   Soon after, defense counsel successfully and promptly objected that Deputy Orton could not give expert testimony on whether "commission of crime [is] something that we can commonly expect from people with Crohn's disease."   The trial court instructed the jury to disregard such testimony.   Deputy Orton then proceeded to give very limited testimony based on his own experience.   Mindful that it may actually be good trial strategy to avoid objecting to inconsequential testimony, to avoid antagonizing the jury with frequent objections, and calling further attention to adverse testimony the trial court is likely to admit, on a silent record, we cannot say that trial counsel's failure to "object further" amounted to ineffective assistance and that appellant satisfied his burden under the first prong of the *Strickland* test.   *See Velasquez v. State*, 941 S.W.2d 303, 310 (Tex. App.—Corpus Christi 1997, pet. ref'd).

With respect to the second *Strickland* prong, appellant fails to point to any evidence in the record that shows a reasonable probability that his punishment would have been decided differently if counsel had further objected to Deputy Orton's testimony. *See Thompson*, 9 S.W.3d at 812.   Instead, appellant argues that this Court should find that he was prejudiced because "reading the record in its totality, it is clear that Deputy

10

Orton's testimony which should have never been admitted caused the jury to elevate defendant's sentence." Appellant further argues that "[a]lthough 18 months is not at the highest end of the potential range 24 month range, 18 months is still overly severe considering that the minimum state jail sentence is six months, and considering defendant's minimal criminal history."

We disagree that the record shows prejudice. As stated above, Deputy Orton's testimony in question spans only a small portion of the record. The reporter's record includes nearly sixty-five pages of testimony, of which approximately thirty pages is testimony on punishment. The jury saw video footage of the actual crime and heard appellant's testimony that he was essentially not to blame for his own conduct in stealing the ring. Appellant also admitted to a criminal history and that he had violated the terms of his Brazoria County probation during the month before trial. On this record, we cannot conclude that appellant met his burden to demonstrate a reasonable probability that but for counsel's alleged error, the outcome of his trial would have been different. *See id.* Appellant's sole issue on appeal is overruled.

## III. CONCLUSION

We affirm the trial court's judgment.

Gregory T. Perkes
Justice

Do not publish. TEX. R. APP. P. 47.2(b).

Delivered and filed the
16th day of August, 2012.