COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-395-CR

 

 

DONALD GULLEY                                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 211TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

I. Introduction

In seven points, Appellant Donald Ray Gulley
appeals his conviction of possession of a controlled substance in the amount of
one to four grams.  We affirm.

 








II. Factual and Procedural History








On December 29, 2005, Officer Brian Cose stopped
a vehicle driven by an individual whom he recognized as Ronnie Kirby.  Appellant was a passenger in the car.  Officer Cose believed Kirby to be driving
with a suspended license.[2]
Officer Cose subsequently arrested Kirby for possession of drug paraphernalia.  After putting Kirby in the back of his patrol
car, Officer Cose walked to the passenger side where another officer, Keith
Martin, was instructing Appellant to step out of the vehicle so that he could
conduct a search of the car incident to the arrest of Kirby.  Appellant stepped out of the vehicle and then
reached back into the car.  Officer
Martin saw that Appellant was swiping his hand across the seat and wiping
something onto the floorboard of the car. 
Officer Martin saw what appeared to be crack cocaine.  Appellant was then arrested for possession of
a controlled substance.  While Officer
Martin gathered all the loose substance he could find from the car=s seats,
floorboard, and surrounding ground, Officer Cose conducted a search of
Appellant and found a pill bottle inside Appellant=s jacket
pocket that appeared to contain crack cocaine. 
The substances were sent to a forensic scientist, who tested them and
later testified that they were both cocaine with a combined weight of one gram.
        Appellant was subsequently charged
with possession of a controlled substance in the amount of one to four
grams.  He pleaded not guilty.  The jury returned a guilty verdict and
assessed Appellant=s punishment at thirty-three
years=
confinement and a $5,000 fine.  The trial
court sentenced him accordingly. 

Appellant filed a motion for new trial on
November 9, 2006.  The hearing was held
on December 21.  At the start of the
hearing, the trial court granted the State a continuance as to Appellant=s
ineffective assistance of counsel issue only, thus prohibiting Appellant from
presenting any evidence on the issue at the hearing.  However, the trial court allowed Appellant to
present evidence on the remaining issues in his motion for new trial.  The trial court held no further hearing on
Appellant=s motion for new trial, and it
was overruled by operation of law on December 27, 2006.  








Appellant filed his appeal on June 19, 2007.  On December 11, 2007, we abated the appeal
and remanded the case to the trial court for a hearing on Appellant=s motion
for new trial based upon ineffective assistance of counsel only.  On January 18, 2008, the trial court held
a hearing on this theory of Appellant=s motion
for new trial.  The record reflects that
the trial court denied Appellant=s
motion.  Appellant=s appeal
was reinstated on February 22 upon our receipt of the supplemental record from
the trial court.

III. Motion to Suppress

In Appellant=s first
point, he argues that the trial court violated his federal and state
constitutional rights against unreasonable searches and seizures by overruling
his motion to suppress the fruits of the illegal stop.

A. Standard of Review








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
Therefore, we give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101,
108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d).  But when the trial court=s
rulings do not turn on the credibility and demeanor of the witnesses, we review
de novo a trial court=s rulings on mixed questions of
law and fact.  Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.

Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  State v. Kelly, 204 S.W.3d 808, 818
(Tex. Crim. App. 2006).      When the record is silent on the reasons for
the trial court=s ruling, or when there are no
explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  Id.  We then review the trial court=s legal
ruling de novo unless the implied fact findings supported by the record are
also dispositive of the legal ruling.  Id.









A detention, as opposed to an arrest, may be
justified on less than probable cause if a person is reasonably suspected of
criminal activity based on specific, articulable facts.  Terry v. Ohio, 392 U.S. 1, 22, 88 S.
Ct. 1868, 1880 (1968); Carmouche, 10 S.W.3d at 328.  An officer conducts a lawful temporary
detention when he or she has reasonable suspicion to believe that an individual
is violating the law.  Ford, 158
S.W.3d at 492.  Reasonable suspicion
exists when, based on the totality of the circumstances, the officer has
specific, articulable facts that when combined with rational inferences from
those facts, would lead him to reasonably conclude that a particular person is,
has been, or soon will be engaged in criminal activity.  Id. at 492-93.  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists. 
Id.  at 492.

B. Analysis

Appellant argues that the evidence obtained as a
result of the stop should have been suppressed because Officer Cose did not
have reasonable suspicion to stop the car in which Appellant was a
passenger.  Appellant argues that the
reasons given by Officer Cose were merely an attempt through hindsight to
create a justification for stopping and detaining Kirby and Appellant. 








We agree with the State that the record supports
the trial court=s conclusion that Officer Cose
had reasonable suspicion to stop the car. 
Officer Cose testified to specific, articulable facts that, when
combined with rational inferences from those facts, led him to reasonably
conclude that Kirby or Appellant was, had been, or soon would have been engaged
in criminal activity.  See Ford,
158 S.W.3d at 492-93.  

First, Officer Cose testified that he reasonably
suspected that Kirby was driving without a valid license at the time he stopped
her and Appellant in December.  Officer
Cose had stopped Kirby a month earlier, and she did not have a valid license
then.  Officer Cose=s belief
that Kirby may have been driving without a license was reinforced when Officer
Martin told him before the stop that he had arrested Kirby one or two weeks
earlier for not having a driver=s
license.  Based on this information,
Officer Cose could have rationally inferred that it was likely that Kirby=s
license was still suspended.  








Next, Officer Cose testified that he reasonably
believed that Kirby was, had been, or soon would be engaged in criminal
activity.  See id. at 492-93.  Officer Cose stated that through his past
contacts with Kirby, he knew that Ashe was
often found with drug paraphernalia,@ such as
crack pipes, and that she was a known drug user.  Officer Cose also testified that in November
2005, he had observed Kirby and Appellant driving a vehicle out of a high-drug-related-crime
neighborhood and heading northbound on the I-35 service road towards the TA
truck stop.  Officer Cose stopped the
vehicle and discovered that Kirby was driving without a license, and he discovered
drug paraphernalia inside the car.  A few
weeks after Officer Cose made the November stop of Kirby, Denton police
arrested a man for possession of drug paraphernalia at the TA truck stop on
I-35, an area known for drug activity. 
He told the police that he was waiting for Kirby and Appellant so that
he could buy crack from them.  The man
also told the arresting officer that when Officer Cose had stopped Kirby and
Appellant in November, they had thrown some crack out of the window immediately
prior to the stop. 

Regarding the December 29 stop, Officer Cose
testified that when he initially spotted Kirby and Appellant, they were leaving
the same high-crime, high-drug area that they had been leaving when he stopped
them in November.  In addition, they were
also heading in the direction of the TA truck stop, the same direction that
they had been traveling in when he stopped them in November.  These facts, combined with the knowledge that
Kirby and Appellant reportedly had had an arrangement to sell crack at the TA
truck stop only a month before, permitted Cose to draw the rational inference
that Kirby, Appellant, or both were, had been, or soon would have been engaged
in criminal activity.  See id.








Based on these specific, articulable facts and
the rational inferences from those facts, it is apparent from the record that
Officer Cose had reasonable suspicion to stop Kirby and Appellant, and thus the
trial court did not err by denying Appellant=s motion
to suppress.  Therefore, we overrule
Appellant=s first point. 

IV. Batson Challenge

In Appellant=s fourth
point, he argues that the trial court violated his federal and constitutional
rights to a jury of his peers by improperly overruling his Batson
challenge.[3]  Specifically, Appellant argues that the State
failed to adequately articulate race-neutral reasons for striking one
venireperson. 

The Equal Protection Clause of the Fourteenth
Amendment to the United States Constitution prohibits race‑based jury
selection.  Jasper v. State, 61
S.W.3d 413, 421 (Tex. Crim. App. 2001). 
When reviewing a trial court=s
finding with regard to a Batson challenge, an appellate court reverses
the ruling only if it appears clearly erroneous.  See Rhoades v. State, 934 S.W.2d 113,
123 (Tex. Crim. App. 1996); Stewart v. State, 176 S.W.3d 856, 858-59
(Tex. App.CHouston [1st Dist.] 2005, no
pet.).  Because a trial court is in a
unique position to make such a determination, its decision is accorded great
deference.  Jasper, 61 S.W.3d at
421; Ladd v. State, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999), cert.
denied, 529 U.S. 1070 (2000).  








Once a party raises a Batson challenge in
the context of racial discrimination, the trial court must engage in a three‑step
inquiry.  First, the defendant must make
a prima facie showing of racial discrimination. 
See Ford v. State, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999); Peetz
v. State, 180 S.W.3d 755, 758 (Tex. App.CHouston
[14th Dist.] 2005, no pet.).  Second, the
burden of production shifts to the State to present a race-neutral explanation
for its challenged strike.  Stewart,
176 S.W.3d at 858.  Third, the defendant
has the burden to show that the explanation given was merely a pretext for
discrimination.  Johnson v. State,
68 S.W.3d 644, 649 (Tex. Crim. App. 2002). 
It is not enough merely to show that a proffered explanation turns out
to be incorrect.  Id.  A party=s
failure to offer any real rebuttal to a proffered race-neutral explanation can
be fatal to his claim.  Id.  The trial judge rules on whether the neutral
reasons given for the peremptory challenge were contrived to conceal racially
discriminatory intent.  Jasper, 61
S.W.3d at 421; Stewart, 176 S.W.3d at 858.  








Here, the State struck venireperson Lloyd
Pullman, who is black.  Appellant raised
a Batson challenge to the strike. 
The State offered the following race-neutral reasons for striking
Pullman: he was a pastor; he appeared to be nodding off during the early stages
of the judge=s instructions and in the State=s voir
dire examination; he appeared to be much more animated in his responses during
the defense=s voir dire; the prosecutor
thought he heard Pullman saying something out loud without being called on
during the defense=s voir dire and saw him nodding
his head vigorously in agreement; lastly, according to the prosecutor=s notes,
Pullman said during voir dire that Athe
difference in a police officer=s
perception versus a juror=s [is] that he=s not
charged with enforcing the law, that that=s the
cop=s
responsibility.@ 

After reviewing the record, we conclude that the
State=s race‑neutral
explanation for striking Pullman was adequate. 
In contrast, Appellant=s reply
that Pullman was not a Ajustifiable@ strike
was insufficient to show that the State=s
explanation was a pretext for discrimination. 
As such, Appellant failed to offer any real rebuttal to the State=s
race-neutral explanations and failed to show that the State=s explanations
were a mere pretext for discrimination.  See Johnson, 68 S.W.3d at 649.  Therefore, we hold that the trial court=s ruling
on Appellant=s Batson challenge was
not clearly erroneous.  Accordingly, we
overrule Appellant=s fourth point. 

V. Article 38.23 Jury Instruction








In Appellant=s second
point, he complains that the trial court erred by refusing to instruct the jury
pursuant to article 38.23 of the Texas Code of Criminal Procedure.  That instruction would have allowed the jury
to determine if the stop was reasonable under the circumstances and therefore
lawful.  Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). 

Article 38.23 provides that no evidence obtained
in violation of state or federal laws or constitutions may be admitted into
evidence against an accused at the trial of any criminal case.  Id.  When an issue of fact exists concerning the
legality of an automobile stop, the defendant has a statutory right to an
article 38.23 jury instruction, instructing the jury to disregard all illegally
obtained evidence.  Id.  However, an article 38.23 instruction must be
included in the jury charge only if there is a factual dispute about how the
evidence was obtained.  See Garza v.
State, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004).  A fact issue about whether evidence was
legally obtained may be raised from any source, and the evidence may be strong,
weak, contradicted, unimpeached, or unbelievable.  Id. 








Appellant argues that there was a factual dispute
as to whether the stop was legal because Officer Cose testified on
cross-examination that he followed Kirby and Appellant for approximately four
minutes before stopping them, that he observed no traffic violations committed
by Kirby, that he acknowledged that it was possible that Kirby could have
corrected her driver=s license status, that he did
not know where Kirby and Appellant were going, and that they were driving a
different route than when they were stopped in November.  For these reasons, Appellant argues that a
fact issue was raised as to the legality of the stop, and therefore article
38.23 was applicable.  

We disagree. 
In his brief, Appellant does not contest the existence or nature of the
evidence underlying Officer Cose=s
decision to stop Kirby.  Instead, he
contests whether the circumstances that Officer Cose observed actually
authorized the stop.  Appellant did not
offer evidence that controverted Cose=s
testimony nor did he call a witness who could dispute the nature of the facts.  See Rose v. State, 470 S.W.2d 198, 200
(Tex. Crim. App. 1971).  Instead, he
relied on Officer Cose=s testimony on cross-examination
as the sole means to show that there was a factual dispute regarding Cose=s
authority to make the stop.  However, no fact dispute was created by Cose=s
testimony, nor did the underlying facts of the stop give rise to a
dispute.  Instead, only the effect of
those facts was disputed.  See, e.g.,
Murphy v. State, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982), rev=d on other
grounds, Atkinson v. State, 923 S.W.2d 21 (Tex. Crim. App.
1996); Cate v. State, 124 S.W.3d 922, 928 (Tex. App.CAmarillo
2004, pet. ref=d) (holding that because
appellant merely contested whether the circumstances as they existed authorized
the stop, he was not entitled to an article 38.23 instruction); see also
Bell v. State, No. 02-04-287-CR, 2005 WL 503647, at *2 (Tex. App.CFort
Worth Mar. 3, 2005, pet. ref=d) (not
designated for publication) (mem. op.). 








We agree with the trial court that because there
was no factual dispute regarding the legality of the stop, the determination of
reasonable suspicion was a matter of law. 
We therefore hold that the trial court did not err in failing to
instruct the jury on article 38.23.  We
overrule Appellant=s second point. 

VI. AReasonable
Doubt@ Jury Charge

In Appellant=s sixth
point, he argues that the trial court violated his federal and state
constitutional rights to a fair trial by misstating the law in its jury charge
concerning the definition of reasonable doubt. 

Appellant objected to the following language in
the charge: AIt is not required that the
prosecution prove guilt beyond all possible doubt; it is required that the
prosecution=s proof excludes all >reasonable
doubt=
concerning the defendant=s guilt.@  The trial court overruled Appellant=s
objection, and this charge was submitted to the jury. 








This court has addressed the propriety of such an
instruction on numerous occasions and found it not to be improper.  See, e.g., Pope v. State,  161 S.W.3d 114, 125 (Tex. App.CFort
Worth 2004), aff=d, 207
S.W.3d 352 (2006); Best v. State, 118 S.W.3d 857, 865 (Tex. App.CFort
Worth 2003, no pet.) (holding that merely giving a reasonable doubt definition
in a jury charge does not constitute reversible error, and the trial court did
not err by submitting a jury charge distinguishing reasonable doubt from
possible doubt).  Accordingly, we hold
that the instruction given was not improper. 
Appellant=s sixth point is overruled.

VII. Ineffective Assistance of Counsel

In Appellant=s fifth
point, he argues that he did not receive a fair trial because of the
ineffective assistance of his trial counsel.

A. Standard of Review 

To establish ineffective assistance of counsel,
Appellant must show by a preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999).








In evaluating the effectiveness of counsel under
the first prong, we look to the totality of the representation and the
particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether
counsel=s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688-89,
104 S. Ct. at 2065.  Review of counsel=s
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  We presume that defense counsel provided
reasonable professional assistance and that his actions might be considered
sound trial strategy.  Jackson v.
State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  To overcome the presumption of reasonable
professional assistance, Aany allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.@  Id., (quoting Thompson, 9
S.W.3d at 813).








The second prong of Strickland requires a
showing that counsel=s errors were so serious that
they deprived the defendant of a fair trial, i.e., a trial whose result is
reliable.  Strickland, 466 U.S. at
687, 104 S. Ct. at 2064.  In other words,
appellant must show there is a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding whose result is being challenged.  Id. at 697, 104 S. Ct. at 2070.  

B. Independent Analysis of the Cocaine

Appellant first contends that he did not receive
effective assistance of counsel because his trial counsel failed to file a motion
for discovery as to the State=s lab
test results and failed to conduct an independent analysis of the confiscated
cocaine.  Appellant argues that such an
analysis was critical because the State=s expert
witness testified that the cocaine totaled one gram, and if the amount had been
less than one gram, then Appellant would have been facing a maximum punishment
of two years instead of the twenty-five years to life that he actually faced. 








Initially, we must note that Appellant=s
argument that his counsel=s failure to conduct an
independent investigation automatically rendered his conduct deficient is
incorrect.  The court of criminal appeals
has clearly stated that defense counsel has a duty to make a proper
investigation and prepare for trial.  Ex
parte Langley, 833 S.W.2d 141, 143 (Tex. Crim. App. 1992).  However, this duty does not require defense
counsel to conduct an independent investigation of the evidence.  Velasquez v. State, 941 S.W.2d 303,
311 (Tex. App.CCorpus Christi 1997, pet. ref=d)
(stating that the court was unaware of any case holding that defense attorneys
in drug cases are required to conduct their own analyses of substances already
determined by the police laboratory to be illicit drugs).  Therefore, counsel was not required to make
an independent investigation in order to render effective assistance of
counsel.  








Although Appellant=s trial
counsel was not required to conduct an independent investigation of the
evidence, his decision not to do so must have been reasonable under the
circumstances.  See Strickland,
466 U.S. at 688-89, 104 S. Ct. at 2065; Thompson, 9 S.W.3d at 813.  At Appellant=s
January 18 hearing, trial counsel testified that he did not request an
independent test of the cocaine because he did not think it was very effective
to Aundergo
a scientific test that would in all likelihood prove the State=s case.@[4]  Such reasoning is troublesome; if trial
counsel had conducted an independent analysis and the results had demonstrated
that the cocaine was more than one gram, then the State=s
evidence simply would have been validated, which is hardly more damaging than
having conducted no testing and leaving the State=s
evidence uncontested.  However, if the
results had shown that the cocaine was less than one gram, Appellant
would at least have put the amount of cocaine in issue, and possibly have
resulted in a maximum of two years=
imprisonment. 

However, despite the troubling nature of trial
counsel=s
decision not to conduct an independent analysis, we determine that even if this
decision satisfied the first prong of the Strickland test, Appellant
must still affirmatively prove prejudice.  See Strickland, 466 U.S. at 688-89, 104 S.
Ct. at 2065; Bates v. State, 88 S.W.3d 724, 729 (Tex. App.CTyler
2002, pet. ref=d).  Despite Appellant=s
contention that an independent analysis was critical because it could have
revealed that the cocaine was less than one gram, we determine that such a
statement amounts to little more than a hypothetical situation with no basis in
the record.[5]  See id.  We iterate that the burden of proof as to this
issue rests squarely upon Appellant.  Id.  








Here, Appellant=s
argument is built on nothing more than retrospective speculation that the
cocaine might have been less than one gram; the record does not reflect that
the weight of the cocaine was ever at issue at trial.  First, the State=s
witness who conducted the analysis of the cocaine testified that the cocaine
weighed exactly one gram.  Appellant does
not direct us to any evidence in the record that would question the amount of
cocaine or indicate that the methods used to measure the cocaine were
inaccurate.  Further, no witnesses gave
any indication that the cocaine appeared to be less than one gram.  In addition, the only evidence in the record
upon which Appellant could claim that the cocaine did not equal one gram was
Kirby=s
testimony that the jacket Appellant was wearing at the time of arrest, which
contained .25 grams, did not belong to Appellant, but to a friend of
Kirby.  However, the verdict reflects
that the jury did not believe this testimony.[6]


Because Appellant has not pointed to any evidence
in the record to support his hypothetical argument, we determine that he has
failed to prove that he was prejudiced by his trial counsel=s
alleged ineffectiveness.  See
Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065; Bates, 88 S.W.3d
at 729.

 








C. Independent Analysis of the Videotape

Appellant next argues that his trial counsel was
ineffective for failing to conduct an independent analysis of the videotape
evidence offered at trial.  Despite
Appellant=s contention that he Amade
some observations that such tampering could have occurred and should have been
investigated,@ Appellant has not pointed to
evidence in the record to show that his trial counsel=s
decision was not reasonable under the circumstances.  In contrast, the record shows that there was
nothing suspicious about the videotape that would have made trial counsel Adame
believe that the videotape had been compromised.  Specifically, Adame testified that he did not
think that the videotape had been compromised. 
Thus, his decision not to conduct an independent analysis was not
unreasonable under the circumstances. 








Moreover, Appellant was unable to show that there
was a reasonable probability that, but for his counsel=s
failure to conduct an independent analysis of the videotape, the result of the
proceeding would have been different.  Strickland, U.S. at 694, 104 S. Ct. at
2068.  We have determined that there was
no support in the record for Appellant=s
speculation that the videotape was tampered with or that an altered videotape
would have changed the outcome of the case. 
Again, Appellant has not demonstrated that his counsel provided
deficient performance or that counsel=s
alleged errors prejudiced his defense.  See
id. at 687, 104 S. Ct. at 2064.

D. Failure to Procure Two Corroborating Witnesses

Finally, Appellant argues that his trial counsel
was ineffective because he failed to produce two witnesses who could have
corroborated Kirby=s testimony that Appellant did
not know about the drugs in the car. 
According to Appellant, his trial counsel failed to call Audra Lasley,
whose testimony could have corroborated Kirby=s
testimony that she and Lasley were doing crack together in the car on the day
that Kirby and Appellant were arrested. 
Appellant also asserts that trial counsel failed to call Marshall Flores
to testify about incriminating statements Kirby made to him regarding the
cocaine being hers and not Appellant=s.  Specifically, Flores was to testify that when
he picked Kirby up from jail following her and Appellant=s
arrests, Kirby told him, AMy baby is going to take my
charges for me,@ and that it was Flores=
understanding that Amy baby@ was
Appellant and that he was going to take responsibility for the drugs that were
seized in the arrest. 








Again, we determine that Appellant has failed to
overcome the presumption that his trial counsel=s
actions were reasonable under the circumstances.  Id.  The record shows that Appellant=s trial
counsel actually subpoenaed both witnesses and made substantial efforts to
ensure that they appeared for trial.  The
record also shows that when Appellant=s
counsel was unable to locate Lasley to testify, he made an offer of proof of
what her testimony would be if she had been present, as well as the efforts he
made to secure her presence before the court. 
The record shows that counsel went to extensive efforts to procure
Lasley=s
presence at trial.  We conclude that
nothing in the record indicates that trial counsel failed to produce the two
witnesses as Appellant alleges. 

Furthermore, Adame testified that he felt it was
the best decision not to call Flores because Ahe
suddenly did not remember having made that statement to me@ and
that Ahe didn=t
remember what [Kirby] had said.@  Adame believed that Flores=s
testimony was potentially damaging to Appellant=s case,
and therefore felt that it was the Abest
decision not to call him.@ 
Moreover, Adame testified that he discussed the situation with
Appellant, and that they made the joint decision not to call Flores to testify.


After evaluating each of Appellant=s
grounds for his complaint that he did not receive a fair trial because of trial
counsel=s
ineffective assistance, we hold that Appellant has not met his burden of
proving ineffective assistance of counsel. 
We therefore overrule Appellant=s fifth
point. 








VIII. Sufficiency of the Evidence

In Appellant=s
seventh point, he argues that the evidence was insufficient to show that he
unlawfully possessed a controlled substance because the State failed to prove
that he exercised care, custody, and control over the .75 grams of cocaine
found on the seat, floorboard, and ground.[7]


In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the verdict in order to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d
691, 693 (Tex. Crim. App. 2005).













To prove unlawful possession of a controlled
substance, the State must prove that (1) the accused exercised control,
management, or care over the substance and (2) the accused knew the matter
possessed was contraband.  Whether this
evidence is direct or circumstantial, Ait must
establish, to the requisite level of confidence, that the accused=s
connection with the drug was more than just fortuitous.  This is the whole of the so‑called >affirmative
links= rule.@  Poindexter v. State, 153 S.W.3d 402, 405‑06
(Tex. Crim. App. 2005). When the accused is not in exclusive possession of the
place where the substance is found, it cannot be concluded that the accused had
knowledge of and control over the contraband unless there are additional
independent facts and circumstances that affirmatively link the accused to the
contraband. Id. at 406.  Factors
we consider include (1) the defendant=s
presence when the search occurred, (2) whether the contraband was in plain
view, (3) the defendant=s proximity to and the
accessibility of the narcotic, (4) whether the defendant was under the
influence of narcotics when arrested, (5) whether the defendant possessed other
contraband or narcotics when arrested, (6) whether the defendant made
incriminating statements when arrested, (7) whether the defendant attempted to
flee, (8) whether the defendant made furtive gestures, (9) whether there was an
odor of the contraband, (10) whether other contraband or drug paraphernalia
were present, (11) whether the defendant owned or had the right to possess the
place where the drugs were found, (12) whether the place where the drugs were
found was enclosed, (13) whether the accused was the driver of the automobile
in which the contraband was found, (14) whether the defendant was found with a
large amount of cash, and (15) whether the conduct of the accused indicated a
consciousness of guilt.  See Tucker v.
State, 183 S.W.3d 501, 510 (Tex. App.CFort
Worth 2005, no pet.).  It is not the
number of links that is dispositive, but rather the logical force of all of the
evidence, direct and circumstantial.  See
Evans v. State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).








The State argues that the sum total of the
evidence is sufficient to establish that Appellant exercised the requisite
level care, custody, and control of the .75 grams of cocaine that had been in
the passenger=s seat.  We agree. Appellant
was present when the car was stopped and the cocaine was discovered.  In fact, Appellant was the closest individual
to the cocaine, as he apparently had been sitting on it at one point.  Thus, Appellant was in close proximity to the
cocaine and it was clearly accessible to him. 
The cocaine was also in plain view. 
Officer Martin saw cocaine Arocks@ on the
seat and floorboard of the car and intermingled with gravel on the road.  There was also evidence that Appellant was in
possession of other narcotics that night as well.  Officer Cose discovered a pill bottle
containing cocaine in the pocket of the jacket Appellant was wearing.  In addition, Appellant made furtive gestures
and indicated a consciousness of guilt when he leaned into the car and began to
sweep the cocaine out of the seat. 
Officer Martin testified that he personally witnessed Appellant trying
to sweep the cocaine out of the seat and onto the ground, and he stated that
Appellant Ademonstrated his possession of
[the cocaine] by exerting force over that object and trying to place it on the
ground.@ 

We conclude that the combined pieces of evidence
coupled with reasonable inferences from the evidence are sufficient to
establish that Appellant exercised actual care, custody, control, or management
of the cocaine on the seat, floorboard, and ground.  Therefore, we overrule Appellant=s
seventh point. 

IX. Motion for New Trial

In Appellant=s third
point, he argues that the trial court violated his federal and state
constitutional rights to a fair trial by improperly denying his motion for a
new trial.  In particular, Appellant
argues that the trial court=s action
to time bar him from having his motion heard was a Aprocedural
default@ that
deprived Appellant from receiving a fair trial because the trial court allowed
the motion for new trial to proceed on matters other than his ineffective
assistance of counsel claims. 

Because Appellant has now had a hearing on his
ineffective assistance of counsel claims and because the record shows that he
had already had a hearing on his remaining claims, we overrule his third point
as moot. 

 








 

X. Conclusion

Having overruled each of Appellant=s seven
points, we affirm the trial court=s
judgment. 

PER
CURIAM

 

PANEL F:    MCCOY,
J.; CAYCE, C.J.; and LIVINGSTON, J.

 

LIVINGSTON, J. dissents
without opinion.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: March 20, 2008











[1]See Tex. R. App. P. 47.4.





[2]Officer Cose testified
that Officer Jason Martin informed him via the radio that Kirby had a suspended
license; however he was unable to verify the information because his computer
system was not working. 

 





[3]Batson v. Kentucky, 476 U.S. 79, 106 S. Ct.
1712 (1986). 





[4]Specifically, Adame
testified that he was concerned that an independent analysis might demonstrate
that the cocaine was actually more than one gram, because it was his experience
that Ainvariably a little bit
of [the cocaine would be] destroyed as part of the testing.  Therefore, what [the lab technicians]
typically testify to is that the amount they report on their lab report is
actually less than what was submitted to them.@ 





[5]In Bates, the
appellant argued ineffective assistance of counsel because his attorney failed
to conduct an independent analysis of the substance recovered from appellant to
determine if it was methamphetamine.  See Bates, 88 S.W.3d at 729.  The court held that appellant=s statement that A[i]f the substance in
question was not a controlled substance, particularly methamphetamine,
Appellant could have been acquitted@ was little more than a hypothetical situation
with no basis in the record.  Id.
at 728-29.





[6]The prosecution and
defense agreed that a lesser included offense instruction should be included
within the jury instructions.  The
instruction permitted the jury to find Appellant guilty of the lesser offense
if they concluded that he Adid then and there intentionally or knowingly
possess a controlled substance, to-wit: cocaine, in the amount of one (1) gram
or more but less than four (4) grams by aggregate weight including any
adulterants or dilutants. . . .@ 

 





[7]Appellant does not
contest the sufficiency of the evidence with regard to the .25 grams of cocaine
that were found in a pill bottle in the pocket of the jacket he was wearing.